You may proceed. Thank you. Mike Gordon from the United States Attorney's Office in Little Rock. May it please the Court. This is a government appeal of the Eastern District of Arkansas of the District Court's order granting the defendants motions to suppress. In those motions, the defendants raised various issues, but there was only one finding against the United States, and that was that there was no probable cause for the traffic stop in this case. What, in the government's view, is the relevance of the Supreme Court's grant of certiorari in Heinen v. North Carolina? That's a very good question, Judge. I'm not familiar with that case. Well, it was cert granted out of a state court which laid out the conflict in the circuits between the Eighth and everybody else and then followed the Eighth. Was that on the objective reasonableness of the offer? Whether mistaken law can be, does not preclude the reasonableness of a stop. Clearly, I don't have enough to speak on that point, but I would say that regardless of which way the Supreme Court goes on that case, there is sufficient evidence in the record and the law is there to support. Well, I'd like to ask you about this Statute 2751.302 about roadways divided into lanes. Yes, ma'am. And that Subdivision 1 says that vehicles should be driven as nearly as practical, entirely within a single lane and shall not be moved from the lane. What relevance does that have here? Well, the relevance for that statute is that both this court and the Arkansas State Supreme Court have reviewed that statute and found that when an officer sees someone cross a fog line, that that statute gives them probable cause to pull them over because that's a traffic violation under the laws of Arkansas. Now, one of the issues in this case is that when Corporal Coleman testified, he testified that when he saw the RV cross over the fog line on the highway, that he relied on 2768.103, which is a different part of the state law. And that is quoted on page 6 of my brief. And the important part here is that section is part of Chapter 68. Chapter 68 regulates the creation, the design, and the use of highways in the state of Arkansas. The section that Corporal Coleman used after he saw the motorhome cross the fog line on two occasions is in Section 103 of that chapter. That is the enforcement provision of the entire chapter. It tells you what the law violations are. And he testified that he relied on 103A1. That statute says it is unlawful for any person to drive over, upon, or across any curb, central dividing section, or other separation or dividing line on a controlled access facility. A controlled access facility is essentially the highway. And so it's our position that since the fog line, the white line on the side of the road, it divides or separates the shoulder from the lane of travel. That is one of the dividing lines or separation lines that are covered by that statute. And based upon the plain language of that statute, Corporal Coleman had probable cause to pull the argument. Why weren't you able to convince the court below that? Judge, I don't know. The court, in its opinion and its order, did some sort of statutory analysis and interpretation. I don't know what it is, because there's no explanation. There's no analysis in the order. It just says, we predict that the Arkansas Supreme Court would hold that this applies to two lanes traveling in one direction and does not apply to a fog line. I don't know how she reached that conclusion. I can't offer that opinion. I think the plain language of the statute itself is contrary to her interpretation. And you all are allowed to review that de novo. If 103 is the enforcement for the entire chapter, including 302, why is it limited to control access facilities? 302 is in a separate chapter, Your Honor. That's in Chapter 51. Oh. What does the record show about the training of the officers? Traffic stops. He was part of the criminal interdiction team since its inception in 2005. He's taught people. He's been trained. His training is very thorough. And he testified that he's relied on this statute historically, although he couldn't give us a number, to pull people over for this exact violation. Okay. Now where's the enforcement provision for Chapter 51? Chapter 51, the violation there in Section 302. That's a rules provision. I'm not sure where the penalties are assigned then, Your Honor. But that establishes the rule. I'm assuming later on there's a separate section that says . . . Well, so you've educated me, but only half educated me on the structure of the statutes. Well, and, Your Honor, because of the mess that I created, I'm asking the Court to focus on Section 103, the plain language of Section 103. By that, you're saying you don't challenge the district court's finding that you had waived the other statute? I do challenge it, Your Honor. I do. In a technical sense, I do. Now, the issue you just said you were relying on, we will have to hold this case for Hine, as I read it. Because that's the square issue. I think you can decide this case under 103 without waiting on Hine. No. That's just what the North Carolina court said. We need the Eighth Circuit if there isn't another statute. If there was a reasonable mistake of the only statute in play, then we need the Eighth Circuit to reverse their court of appeal. Your Honor, on that point, our position is that there was no mistake, that he did exactly what 103 authorized him to do. There is no mistake of law or of fact applying Section 103 to this case. Then I'm back to my controlled access. It's limited to controlled access. I understand why the district court thought, since it's limited to controlled access, it's only providing for crossing the median, when you can go into the opposing lane. Actually, if you look at the entire section, Section 103, that's what Section 2 talks about. With the court's interpretation, Section 2 says it's unlawful to make a left turn or semicircular U-turn except through an opening provided for that purpose in the dividing curb, section, separation, or line. That's where we're talking about you can't. A separation or dividing line on controlled access facilities. The shoulder is not a dividing line between the controlled access lane. It's not a dividing line between lanes. I think that's where the district court had a problem with 103. As I read High End, if you haven't waived 302, we don't have to worry about High End because North Carolina law clearly had a case which all seven of a four to three divided court said was good law, that if there was another statute that the officer didn't note it, that he didn't cite, then it's okay, which is most of our prior cases. Before you run away from 302, you ought to know you may be giving away the farm. I don't want to run from 302, but I do recognize the mess that I created while in court by my statement. I don't see it. It was in the brief, right? The pre-hearing brief said we're relying on 302. And or 103, yes, sir. Yes. And then I said something wrong. The motion that you have to appeal from the denial of a motion to supplement the record, which wasn't even needed, I don't know why you're not fighting that. Well, I'm not conceding the point, Your Honor. Well, you may have to have it. In my opinion. Supreme Court reverses High End. Your 103 argument is on very thin ice. Okay. And, again, I was unaware of that case. But you were aware of the conflict. I was aware of the conflict, yes, sir. This is the conflict. I would guess the other circuits don't have a problem with upholding a stop where the officer had reasonable suspicion or probable cause but didn't cite the right provision or didn't know. He just happened to be right. That's good enough, right? Objective reasonableness. Yes, sir. And the notion it matters what he testifies to, this is not a hindsight inquiry. Correct. That's irrelevant. Just as it's irrelevant whether he can cite the right statute to the motorist who's been stopped. I agree. I'm short on time. What I'd like to do is reserve my remaining three minutes for rebuttal. I wish I had the enforcing statute for 302 because if 103 is limited to control access facilities, it makes a difference. You may reserve the remainder of your time if you so desire. Thank you. Thank you. We'll hear from Mr. Short. Yes, Your Honor. Good morning, sir. You may proceed. Good morning, Your Honors, and may it please the Court. My name is Lee Short, and I, along with the co-defendant's counsel, David Cannon, represent Mr. D'Amelio and Mr. Derrick. Their issues are identical. Their claims are identical, and so I will be arguing for both today to preserve any issues of redundancy. Very well. Thank you, Your Honors. This case should be affirmed. I think you really only have to reach two findings. One, Section 103 doesn't prohibit driving on the fog line, and I think as Judge Loken said, and I hope to give the Court a few reasons why that's so. In addition, number two, for a variety of reasons, any claim that Section 302 permitted the stop has been waived, disclaimed, and not argued sufficiently on appeal. First, as far as Section 103 goes. Not argued sufficiently. When? Today? Your Honor, they, today, well, I'm not. They clearly preserved it. Your Honor, actually, he said at the hearing that he was not going to argue Section 302. That was at the hearing. You just said appeal. Your Honor, okay, and then I'll stick to appeal. They didn't argue anything about the motion to supplement the record on appeal, not once. They don't need it. The motion to stop that, so that was a nothing. That was preserved by their pre-hearing brief. Respectfully, other circuits have disagreed, and I'm asking this Court, and I understand that they're only instructive. Where is, who disagrees? Your Honor, the Eleventh Circuit has actually disagreed, and actually the Supreme Court has stated that the government can waive certain arguments. Of course they can waive certain arguments. Absolutely, by not bringing them in a timely fashion, and that's exactly what. They couldn't have been more timely. The pre-hearing brief told everybody what was going to be at issue at the hearing. And then at the hearing, he disclaimed it, and that ended it. Okay, but where is the prejudice? Your Honor, the lower court actually found prejudice. There's two requirements to get to supplement a record. One, we have to prove that there would be. This isn't supplementing the record. I don't care if there was a motion. Your Honor, that's exactly what the Eleventh Circuit addressed in Thompson when they disclaimed reasonable suspicion as a basis, and then they attempted to reassert it. It's still a matter of law, and they have to meet two burdens to get to reassert an issue of law. First, they have to prove that there would not be some prejudice to the other side by not having an opportunity to address the issue or not in the hearing because they waived it. Second, they have to prove, and the case law is very clear, they have to provide some basis for not providing it at the hearing. So if you're asking to supplement the record, you have to establish why you did not do it at the hearing. They didn't even attempt to do that, and that's what the argument is. Your description, if you're talking Thompson on page 17, is in Thompson, the government expressly conceded reasonable suspicion, but instead going with a different argument to oppose suppression. Correct. That's not this case. I believe it is, Your Honor. I don't believe it's sufficiently distinguishable. It's the same here. They said we're not going to argue 302, we're not going to do it. We're going to argue 103, and therefore, and what the Eleventh Circuit held is the government did not offer justification for not raising it there. That's the important part. And all the case law on motions to supplement records after hearings makes it very clear that they have to provide a basis for not doing so at the hearing that's sufficient. The district court and your standard of review, which they didn't even set out in their brief to make it so clear they've abandoned it, is abuse of discretion. It's abuse of discretion for whether they get to supplement. What did the government show in their post-argument or post-hearing motion, as it were? They said it was a mistake. We would like to reassert 302. And the district court's reply was? The district court's reply was no. You abandoned it at the hearing. I feel that you have not given, A, sufficient reason, and, B, it would cause prejudice. Was this after the ruling? It was prior to the ruling, but it was after the hearing, so we didn't have the opportunity to ask certain questions or put certain witnesses on based on their disclaiming of 302. And you filed an opposition explaining the prejudice? Absolutely. Exactly what questions you would have asked? I said there would be prejudice because I didn't get to ask those questions. What questions? Well, there's questions such as I didn't get to put my client on because it wasn't necessary anymore to talk about the road conditions, the size of the RV, how difficult it would be to maintain within a single lane, the exact same things this court analyzed in Herrera-Gonzalez. I didn't need to address those issues. Any questions that you said you would have asked the trooper? And there might have been questions I would have asked the trooper as well. Might have been. In your showing to the district court of prejudice, did you cite questions you would have asked the trooper? Yes, Your Honor. Those same issues, whether I would have asked them to the trooper or my co-counsel would have put one of the co-defendants on to talk about what the road conditions were and what was going on with how big the RV was, how difficult it would be to maintain within a single lane. When was the last time you called a defendant to testify at a suppression hearing? Your Honor, actually for standing I did it yesterday. But respectfully, I think that when you look at these other cases, you even look at the D.C. Circuit. The case cited greedily on page 18. The government cannot re-litigate issues resolved by an order without advancing a justification for failing to develop those issues fully at the hearing. At the hearing. Well, they made a mistake. That's the justification. Did the government in its motion or whatever it filed ask for a remand to conduct further hearing? The government has never asked for that. The government has never asked for that. And on appeal, they haven't even addressed the fact that their motion to supplement was denied. And they haven't ever given justification other than a mistake. They haven't even argued it was an abuse of discretion not to allow it. Not once can you find in their brief where they have said it was an abuse of discretion not to consider 302. You can't find it in there because they didn't even argue it. And that's procedurally one of the issues here is they can't get to 302 because the real standard of review to get to 302 is an abuse of discretion on the supplement of the record. And what they've got to prove again is that there wouldn't be prejudice to us and they've got to give an explanation or a justification. And no court's ever held that I messed up was a sufficient justification. And we all suppose. I guess the court could have reopened the hearing and such. But the court didn't. The court said your justification wasn't good enough and your claim and I'm not going to do it. And it would prejudice the defense. Did the district court say anything about had the government presented the 302, I would have ruled against the government anyway? That's exactly what the court said as well. The court said it ran contrary. What the court said in one of its final sentences on the issue is it ran contrary to the testimony by the corporal. Because here's the issue. On facts or on law? On facts. Just because of his testimony? In a sense, yes, Your Honor. Because the truth of the matter is- You got a case where the testimony was critical to limiting what the government could rely on under the Fourth Amendment? Where testimony- The district court says, well, I can distinguish this Eighth Circuit case because here the trooper testified at the hearing as to what he relied on instead of just telling the motorist what he was relying on. Now, what case supports that? That's a material distinction. Right. I think what the- And, Your Honor, respectfully, I don't have a case that- I don't think so. But I believe what the court's saying is what's important about when the officer testified that this is the statute that I pulled him over for is not just that's the statute, is he never once says that he would have had probable cause to pull him over. There's nowhere in the record you can see that he would have probable cause under 302. He never said that. Wren doesn't require that. I'm not saying Wren. I'm saying he didn't violate this statute. He didn't have probable cause of a violation of the statute. He never said that. The trooper, the person that was there- He's irrelevant to the existence of objective probable cause. His facts. Other than the facts, yeah. His facts. And his facts didn't rise to probable cause of a violation. But we don't- You mean he didn't testify to crossing the fog line? And Herrera-Gonzalez makes it very clear that alone is not going to get you there because there's also the part that says without moving safely. Who was asked about moving safely? No one was asked that question because they disclaimed 302. My co-defendants didn't testify that any movements they made were made safely because that was specifically waived. So you're taking that one point in isolation, Your Honor, but the case law, Herrera-Gonzalez, out of the Eighth Circuit, specifically went through all of the statute and all of the factors when you're talking about moving as nearly as practical and did you make the move with safety. And so even if you got to 302, the facts don't support it. And more importantly, we didn't get to fully develop those facts. But they've never asked for a remand. And respectfully, I mean, he didn't violate the statute. But most importantly, you don't get there because he waived it. And then on appeal he had once said abuse of discretion by not letting them relitigate it. And I would ask this court not to allow them to reinterject or not to make the argument for them. I mean, not once did they say it was an abuse of discretion. And that's the standard this court has to find is that the district court abused its discretion by not letting them use that argument. Well, didn't, let's see, Corporal Coleman did agree that he told Mr. D'Amelio that he pulled over the RV because the RV got on the fog line. Correct. And what do we take from that? We take from that that's one of the factors of many. Just like any case, when you're evaluating probable cause, you do it in the totality. And that would be one factor when you're determining whether there was probable cause for a violation of the statute. And that would be one factor, admittedly. So he relied on the fog line statute, even though he said he wasn't relying on the fog line statute. I don't believe he relied on it. Who do we care what he relied on if, in fact, he could have relied upon it? Okay. And if we're going to, one, I don't believe he could have relied on that statute. But we didn't fully develop those facts because they waived it. And, again, they waived it. Well, we're back to that. How could you not come to the hearing prepared to meet that when it was in the pre-hearing brief? Because he stood up before the court and told the court to their face, I'm not going to argue 302. Not going to do it. When? At the hearing. When? During the examination of the trooper, Trooper Coleman. The director that crossed. It was the redirect. So he was cross-examined on 302. He was questioned. He was cross-examined with 302 in the case. Yes, he was. However, the co-defendants were not put on the stand to develop their testimony with regard to 302 as far as what happened to evaluate the credibility of the officer, which at that point was highly in question because if you watch the video, you don't see what he's talking about as far as whether there was any crossing of the line or anything like that. Is the video, let's see, a part of the record, I guess, is it not? I believe it is a part of the record. Do you believe or do you know? It is. Okay, well, then you know. It is. There was evidence about all his years of experience, wasn't there? There was evidence of his years of experience, 20-something years of violating people's rights on the highway left and right. He said he had done it thousands of times, and that's why this case is so important, and I think that's why you've got a suppression order, is because he's violated thousands and thousands and thousands of people just under this one statute because he didn't know the statute or he didn't care what the statute said. And so what he did is he violated the rights over and over and over and over and over. It just happens that this time someone was able to get in court to litigate their violation of their rights. All those thousands of people before either got tickets and paid them or they didn't get a ticket because he just violated their rights in that he held them on the side of the road for an hour. So, yes, he has experience at violating people's rights, and I'll give him that. And I think that's the extent of his experience. How is your view on all that? Because, well, he said he's using this statute, which clearly doesn't mean what he's saying it means. Which one is that? Section 103. There's no question it doesn't mean the fog line. There's no question? In Arkansas law? I thought this was first impression. Your Honor, I mean, it's first impression because no one's litigating it because I don't believe. I mean, it's so obvious. There's no reason to believe that it encompasses the fog line. I mean, one, the officer testified that under his interpretation of 103 that all the lines on the road, you can't cross any of them, means changing lanes violates this statute. He said that in the record, that changing lanes would violate this statute. That's the testimony of the officer. And so that's how absurd his interpretation of this statute is. In addition, if you look at the history of that statute, you find, as Judge Loken, as you stated earlier, you find other courts that have said it was drafted with the end of making it unlawful to cross the median. It was intended to prevent people traveling in opposite directions. Missouri and Ohio clearly state that. I mean, there's no question. The government says this one's more broadly worded. Well, I mean, first of all, that's not true. They all stem from the same statute. They're all worded very similar. And it's preposterous that changing lanes, because you touch the dot-dot-dot lines, would violate the statute. I mean, that's preposterous. I don't think anyone can deny that. You also can't drive to the— It's certainly not preposterous in my Fourth Amendment case experience that traffic stops are often from crossing lanes, lane changing, crossing, going on the shoulder, all the other things that may or may not suggest impaired or drivers or those who may be falling asleep. You know, we see legion of those. And, of course, only when they wind up when there's something in the vehicle that produces a federal offense. But I don't know that it's that—I'm not addressing Arkansas law. I'm just saying I think there's a legion of cases where traffic stops for lane violations have been held to be reasonable. And, Your Honor, may I address— You may answer. I understand. And, Your Honor, I think that ultimately gets to your question earlier about the Supreme Court granting cert on the issue of reasonableness. And I think that one thing you'll see in their appeal also is that they have never once asserted that if you find that he makes a mistake of law, it was reasonable. That has never been asserted. And I know it's important to you, but they have never once put that in their brief, and I specifically put in my brief, that I'm not going to address it because they didn't argue it on appeal. And for those reasons, Your Honors, I appreciate the Court's time, and I ask you to affirm the District Court. Your Honor, suppose—what if we reverse the District Court and say the District Court heard—I suppose we'd have to say abused its discretion by suppressing the evidence. Then what happens? The District Court went ahead and ruled against you on the other points. Are you going to appeal now from those points on consent and everything else? Your Honor, I would suppose that—I mean, I guess first— —very exhaustively examined each of your claims, did she not? Absolutely. Absolutely she did, and I think I'd have to look at the law and whether after the case was over, whether I would have the right to appeal those as well. But I think that there would be some challenges whether I would get to reopen this hearing. And, I mean, I understand it's with your— Well, let's worry about this case, I guess. I shouldn't—I'm just curious about it. Thank you for your argument. Thank you, Your Honors. I would like to highlight or perhaps correct some of the things said about the waiver issue. First, in my original response to the motion to suppress, I did put in there that probable cause was appropriate under Section 103 and or Section 302. My first motion—my first response was filed seven months before the motion to suppress. Right before the suppression hearing, Mr. Derrick filed his, and my response was exactly the same. I believe in the defendant's brief, they even admit when they came to the hearing, they were prepared to address both 103 and 302. The timing of my misstatement, I think, is important because it did not happen until on redirect. It's unfortunate that it did happen, but I directed Corporal Coleman. Both sides thoroughly cross-examined him about the facts and the law. They could have asked all these questions about Section 302 and whatever issues they wanted to cover because no one had any idea I was going to say what I said. I didn't even know that, but they didn't ask those questions. And so the opportunity was there. They passed on it, and now, of course, they need to claim prejudice, but I think that's kind of illusory. Do you agree with counsel that you are not arguing a reasonable mistake of law on the 103 issue? Your Honor, I was instructed in the approval process that I cannot argue that point. We are aware of this Court's precedent, but I am not allowed to argue it. Okay. I'm not allowed to argue. I want to get this right. To argue the what point? The high end point. The high end point. Yeah. Whether the mistake of fact or mistake of law, I guess the mistake of law in this case was subjectively reasonable. I cannot argue that. I'm telling my law crew who worked on this case with me, you have to get permission to take this bill, obviously. Yes, sir. From the Solicitor General. Yes, sir. Okay. I would also like to point out on the waiver issue, I filed the notice the next business day after the hearing. It was not a request to open up the suppression hearing. It was a notice to the Court and to the parties that, hey, I said the wrong thing. I told you this before. It was A and B. In the hearing, I mistakenly said this, and I put everyone back on notice that I had made a mistake, and that was a month before the Court's order ever came out. And what follows from that? I don't know, Judge. I've been doing this for . . . Was the district court supposed to say, well, we'd better go back and continue the . . . I don't know. I don't either. This had never happened before. There is no case on the books like this at all, and so I couldn't just let it lie, so I just put everyone on notice. Okay. Well, now, I guess you've made your argument, and my questions would only be fog things. Anything further? Your time is up. Can I correct you? Unless you have one further final statement. I do, Judge. You had asked if the Court made a finding of probable cause under Section 302, and opposing counsel said no. And actually, the district court, in her order, states that under 302, there was probable cause for Trooper Coleman to stop the motorhome. She says she recognized the Court's recent opinion in, I think you say, Guevara from 2012. I can give you the site. It is in my brief. But she distinguished this case from Guevara and said she wasn't going to follow Guevara. Did she backtrack on that then, on the later ruling? No, sir. In denying the motion to supplement? I don't think there ever was an official denial of the motion to supplement. I didn't see one in the . . . We have the opinion in the order. She discusses it in her order on the motion to suppress, but there's no official denial or anything like that. But she specifically found probable cause under 302 under Guevara, but she distinguished our case from Guevara because Corporal Coleman testified specifically that he used a different statute as the basis for the traffic stop, which under precedent is not a meaningful distinction, and then also because she found waiver. Well, thank you for pointing that out. I'm glad that you had that final statement, and I did not ramble on with my questions. We thank both sides for the argument. The case is submitted, and we will take it under consideration. That completes our oral argument calendar.